INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Plaintiffs–Appellants,

v.

STATE OF MICHIGAN, et al., Defendants–Appellees.

No. 87–2228.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1989.

Decided and Filed Sept. 28, 1989.

Rehearing and Rehearing En Banc Denied Nov. 29, 1989.

Jordan Rossen, Connye Y. Harper, Laura Campbell, Intern. Union (UAW), Detroit, Mich., Winn Newman, argued, Lisa Newell, Newman & Newell, Washington, D.C., for plaintiffs-appellants.

Gary P. Gordon, Deborah Anne Devine, Todd B. Adams, argued, Asst. Atty. Gen., Lansing, Mich., for defendants-appellees.

Robert E. Williams, Douglas S. McDowell, Lorence L. Kessler, McGuiness & Williams, Washington, D.C., for amicus curiae Equal Employment Advisory Council.

Before MARTIN and RYAN, Circuit Judges, and SILER, Chief District Judge.[*]

SILER, Chief District Judge.

This class action charges the state of Michigan and the Michigan Civil Service Commission (collectively, "defendant") with sex-based wage discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiffs represent all classified employees of the state of Michigan who work in predominantly female job classifications. The District Court dismissed plaintiffs' complaint, finding insufficient evidence to establish the requisite intentional discrimination in the State's job classification system. *International Union, UAW v. Michigan*, 673 F.Supp. 893 (E.D.Mich.1987). Plaintiffs appeal. For the following reasons, we conclude that plaintiffs failed to establish a violation of Title VII, and affirm the ruling below.

Defendant instituted its first civil service classification and compensation system, the Position Comparison System (PCS), in 1938. Although relatively simple in its infancy, by the early 1970's PCS had grown to unmanageable proportions. Defendant hired independent consultants to assist in revamping the system, and, in 1972, adopted a plan similar to that recommended in the Oliver Report, a United States Civil Service Commission study. However, the Oliver system encountered severe implementation difficulties, especially regarding a lack of consistency in factoring job positions. Upon review, in 1975, defendant began installing a new system, which used a modified Oliver system base.

* Honorable Eugene E. Siler, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky and Judge, United States District Court for the Western District of Kentucky, sitting by designation.

The new "Benchmark" system established additional occupational service groups, which largely paralleled labor market occupational groups. Job evaluation rested on five factors: knowledge requirements, nature of work, responsibility, personal relationships, and physical effort/work environment. Defendant developed classification guides for each service group. Before conversion to the benchmark system, defendant submitted each guide to the individual departments, the employees, and the unions for review and comment. After conversion, employees had the right to appeal the factoring, placement, and pay range of their position. The process included public hearings with input from the defendant's staff, labor unions, and representatives of the individual departments. In 1980, defendant gave its employees a limited collective bargain privilege, including the ability to negotiate the pay range assigned to a job classification. Presently, collective bargaining sets wages for all but the nonexclusively represented employees.

Implementation of the Benchmark system brought to light certain pay disparities between male and female dominated jobs at the same class and level. Federal reports suggested that not only were females concentrated in lower paying jobs, but also that there was a sex-based difference in pay for jobs with equal Benchmark point totals. Defendant commissioned a comparable worth study, which found that predominantly female classes were paid less than predominantly male classes with similar objective job scores.[1] Defendant then created a Comparable Worth Task Force, accepted the resulting report, and is presently implementing the recommended system modifications. These system adjustments will cost defendant approximately twenty-one million dollars.

Plaintiffs contend that such facts support their claims that defendant is guilty of sex discrimination in the classification and compensation of its employees, establishing and perpetuating different wage rates for male and female classes in the same grade level, and paying inferior wages to predominantly female job classifications, all in violation of Title VII of the Civil Rights Act of 1964, which forbids gender-based discrimination in compensation.

"Comparable worth" is a concept of claiming "increased compensation on the basis of a comparison of the intrinsic worth or difficulty of [a] job with that of other jobs in the same organization or community." *County of Washington v. Gunther*, 452 U.S. 161, 166, 101 S.Ct. 2242, 2246, 68 L.Ed.2d 751 (1981). The district court below found this was a comparable worth case, 673 F.Supp. at 902, and we also conclude that it is, even though plaintiffs have avoided the term.

Federal courts must apply anti-discrimination laws such as Title VII in a manner consistent with Congressional intent. While plaintiffs do not explicitly state an Equal Pay Act[2] claim, which mandates equal pay for equal work, it must be considered, given the circumstances confronting us. As one court has found:

> Two major legislative enactments create causes of action and remedies for discrimination in compensation on the basis of sex; read together, they indicate that Title VII cannot be extended to impose a particular wage scale suggested by an evaluative study which an employer has not adopted. The legislative history of the Equal Pay Act indicates that Congress carefully considered and specifically rejected a comparable worth standard when it enacted the Equal Pay Act. One year later, when debating Title VII, Congress neither explicitly nor implicitly reversed its earlier policy judgment.

*American Nurses Ass'n v. Illinois*, 606 F.Supp. 1313, 1316 (N.D.Ill.1985) ("Am. Nurses I"), *rev'd on other grounds*, 783 F.2d 716 (7th Cir.1986). The Supreme Court examined the purposes and relationship of the Equal Pay Act and Title VII in *Gunther* and found that the Bennett

---

**1.** The study did not, however, reach any conclusions regarding intentional discrimination.

**2.** 29 U.S.C. § 206(d)(1).

Amendment[3] to Title VII suggests an intention to incorporate the affirmative defenses of the Equal Pay Act into Title VII. 452 U.S. at 168, 101 S.Ct. at 2247. These defense provisions authorize an employer to differentiate in pay on the basis of seniority, merit, quantity or quality of production, or "any other factor other than sex." 29 U.S.C. § 206(d)(1)(iv).

Therefore, in a comparable worth case, there is a requirement of intentional discrimination or disparate treatment. *See Gunther*, 452 U.S. at 204, 101 S.Ct. at 2265 (Rehnquist, J., dissenting). While plaintiffs may use statistical or circumstantial evidence to prove intent, *see Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–51, 57 L.Ed.2d 957 (1978), the weight to be accorded such statistics is determined by the existence of corroborative evidence of discrimination. *American Fed'n of State, County, and Mun. Employees v. Washington*, 770 F.2d 1401, 1407 (9th Cir.1985) ("AFSCME") (Kennedy, J.). Plaintiffs must ultimately demonstrate that defendant was motivated by impermissible gender-based considerations in assigning wages. *Gunther*, 452 U.S. at 204, 101 S.Ct. at 2265; *American Nurses Ass'n v. Illinois*, 783 F.2d 716, 720 (7th Cir.1986) ("Am. Nurses II").

■ Plaintiffs identify three predominantly female job categories in the Benchmark system that are paid less than similarly ranked predominantly male categories. Such comparable worth statistics alone are insufficient to establish intentional discrimination, especially when based on only three of over 2500 job classifications. *AFSCME*, 770 F.2d at 1407. *See Bazemore v. Friday*, 478 U.S. 385, 398, 106 S.Ct. 3000, 3007–08, 92 L.Ed.2d 315 (1986) (plaintiffs must establish that discrimination was standard operating procedure) (Brennan, J., concurring); *Am. Nurses I*, 606 F.Supp. at 1319 ("The court cannot infer intent from the existence of wage differences between employees in historically female-dominated job classifications and employees in historically male-dominated job classifications").

■ Title VII is not a substitute for the free market, which historically determines labor rates. Nor is the task of assigning comparative worth "the sort that judges are well equipped to resolve intelligently or that we should lightly assume has been given us to resolve by Title VII or the Constitution." *Am. Nurses II*, 783 F.2d at 720. As the Ninth Circuit stated, "[w]e find nothing in the language of Title VII or its legislative history to indicate Congress intended to abrogate fundamental economic principles such as supply and demand or to prevent employers from competing in the labor market." *AFSCME*, 770 F.2d at 1407. Mere failure to rectify traditional wage disparities that exist in the marketplace between predominantly male and predominantly female jobs is not actionable. *Spaulding v. University of Washington*, 740 F.2d 686, 706–07 (9th Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984); *Lemons v. City of Denver*, 620 F.2d 228 (10th Cir.), *cert. denied*, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980); *Christensen v. Iowa*, 563 F.2d 353 (8th Cir.1977). An employer must be allowed to pay the wages necessary for it to compete in the marketplace for qualified applicants. Without more, discriminatory intent may not be inferred from defendant's failure to depart from free market parameters in determining job classifications and wages, even if the market can be shown to contain minor flaws.

■ Plaintiffs, however, contend that through defendant's own market studies, defendant knew of the wage disparities in the Benchmark system. Such knowledge, plaintiffs assert, is tantamount to intent, because defendant deliberately perpetuated a system it knew to be discriminatory. Such an argument distorts the purpose of comparable worth studies, which are voluntary diagnostic tools used to examine a particular aspect of an employer's work force. Such studies do not examine market forces, labor trends, economic predictions, the employer's economic health, and other factors an employer must weigh before

---

**3.** 42 U.S.C. § 2000e–2(h).

implementing change. Nor does a comparative work study factor in its own validity. To wield these studies as swords against the well-intentioned employer would quickly spell their demise. *See Am. Nurses II,* 783 F.2d at 722.

Plaintiffs must prove that failure to act upon the comparative worth study was motivated at least in part by a desire to benefit one sex at the expense of the other. Yet plaintiffs cannot show that gender was ever considered in classification, nor can they allege that defendants ever denied women access to the predominantly male jobs that they contend were overpaid compared to their worth. Nor does plaintiffs' position comport with defendant's course of conduct. Defendant has consistently demonstrated a sensitivity to inequities in its own system, and is presently effectuating changes at great expense. In developing the Benchmark system, defendant engaged in extensive public hearings, and later granted collective bargaining. Such conduct is inconsistent with an intent to discriminate against women in predominantly female classes.

Although the district court found this to be a comparable worth case and only subject to the disparate treatment analysis, nevertheless it is proper to consider whether the district court failed to consider that Title VII claims of wage discrimination are subject to disparate impact analysis. *See EEOC v. J.C. Penney Co.,* 843 F.2d 249 (6th Cir.1988).[4] However, even if plaintiffs had alleged a disparate impact claim that did not include comparable worth, defendants may refute it by demonstrating that the challenged practice was adopted for a legitimate business reason. *See Watson v. Fort Worth Bank and Trust,* 487 U.S. ——, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Furthermore, as this Court resolved such claims under the disparate impact theory in *J.C. Penney Co.,* without a remand, likewise we find that even if such proof is considered, the defendants satisfied the burden of showing the

employment practices in this case were based upon a legitimate business reason.[5]

Judge DeMascio found that Systems I and II of the original Benchmark system were replaced with service groups because the defendants "had difficulty in achieving consistency in evaluation and factoring among the different committees, were far beyond their deadlines, and perceived the task of implementing an entire system at once to be almost impossible." 673 F.Supp. at 898. He also found that the predominantly male class of liquor control clerks was assigned to the Labor and Trades group, rather than the Clerical group, because of the physical aspects of that job; that the expansion of the number of service groups from five to eleven was appropriate because the resulting eleven groups reflected legitimate labor market occupational groups; and that the decision to raise the entry level janitor position to skill level II and to require one year's experience was justified "because of the need to hire people capable of operating heavy machinery." *Id.* at 899. As these findings are not clearly erroneous, and constitute legitimate business reasons, there is no need to remand for further proceedings.

In sum, we hold that the district court did not err in dismissing plaintiffs' claim. Plaintiffs fail to show that the defendant depressed the wages of particular workers because most of the workers were female. Nor can we find such intent in defendant's conduct. Without discriminatory motive, defendant's reliance on the market to guide its classification and compensation system is not actionable under Title VII. Consideration of the demand and supply of a particular job skill is a normal and legitimate business practice, here engaged in by a defendant which has constantly adjusted a valid system to address perceived imperfections.

Plaintiffs also allege that the district court erred by refusing to compel discovery, such as not requiring the defendants to produce computerized personnel

---

**4.** It should be noted that Judge DeMascio did not have the benefit of that opinion, as his decision antedated it by about five months.

**5.** Defendants have the burden of producing evidence of a business justification, but plaintiffs still have the burden of proof. *See Wards Cove Packing Co. v. Atonio,* —— U.S. ——, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

records before depositions were taken. However, that evidence was produced later. Other issues raised were that the court refused to order discovery from the individual appointing authorities, that Dr. Rothman's testimony on rebuttal should not have been excluded, and that plaintiffs' expert witnesses were not allowed to sit at counsel table when defendants' expert witnesses testified.

All of these matters come within the discretion of the trial court and do not amount to reversible error unless there is an abuse of discretion and substantial prejudice. *See Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198 (6th Cir.1986). Plaintiffs have failed to demonstrate either an abuse of discretion or substantial prejudice. Moreover, they engaged in extensive discovery, although some of it was after the court had extended the discovery cut-off date, and had to be compelled to answer interrogatories and to make experts available for depositions. Therefore, the district court did not commit reversible error in supervising discovery nor in conducting the trial.

For the reasons set out herein, the decision of the district court is affirmed.