**C & M TRUCKING, INC.,**
Plaintiff–Appellant,

v.

**NORTH STAR STEEL COMPANY,**
Defendant–Appellee.

No. 00–1484.

United States Court of Appeals,
Sixth Circuit.

April 4, 2002.

Before SILER and GILMAN, Circuit

Judges; and HEYBURN, District Judge.*

SILER, Circuit Judge.

Plaintiff C & M Trucking, Inc. ("C & M") filed this diversity action, claiming that defendant North Star Steel Company ("North Star") breached an exclusive motor carrier contract between the parties by using another carrier. A jury determined that their contract did not provide that C & M would either be the exclusive carrier for North Star or have a first right of refusal. C & M now appeals the district court's denial of its motion for a new trial. As set forth below, we AFFIRM.

## BACKGROUND

C & M is a trucking company located in Michigan. North Star, a Minnesota corporation, is a shipper and manufacturer of steel products with a production facility in Michigan. On March 23, 1994, C & M and North Star entered into a motor carrier contract providing that C & M would supply transportation services for North Star between various points in Michigan for a period of five years as "one of SHIPPER's core carriers." The contract stated that North Star would pay to C & M point-to-point rates pursuant to the Michigan Minimum Rate Order. Pursuant to the contract, "[s]uch rates may be amended annually, when agreed upon by both parties." The motor carrier contract contained an integration clause.

In 1995, the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 1450, became effective and deregulated carrier rates such as the Michigan Minimum Rate Order. Following deregulation, North Star requested that the parties modify the contract with respect to the method of calculating the mileage. C & M refused to accept the change. By letter dated November 19, 1996, North Star informed C & M that its refusal to cooperate necessitated that North Star locate another motor carrier and that while North Star intended to remain in compliance with the contract, its shipments to C & M would decrease substantially. In December 1996, North Star began to tender freight to another motor carrier for the majority of its Michigan shipments.

C & M filed this action against North Star, alleging breach of contract, detrimental reliance, and promissory estoppel. It asserted that North Star agreed to make C & M its exclusive core carrier for the state of Michigan and that North Star breached the motor carrier contract by replacing C & M with another carrier when C & M would not agree to the rate changes requested by North Star.

Determining that the term "core carrier" as used in the motor carrier contract was ambiguous, the district court allowed the admission of extrinsic evidence and submitted the issue to the jury for resolution. The jury answered "no" to the following question:

> Did the March 23, 1994 Motor Carrier Contract between plaintiff and defendant provide that plaintiff would either (i) be the exclusive carrier or (ii) have a first right of refusal before defendant selected any other carrier?

Based on the jury's verdict, the district court entered judgment in favor of North Star.

C & M filed a motion for judgment notwithstanding the verdict, to alter or amend the judgment, or for a new trial.

---

* The Honorable John G. Heyburn II, United States Chief District Judge for the Western District of Kentucky, sitting by designation.

The district court denied C & M's motion.[1]

## DISCUSSION

### A. Whether a new trial is warranted based upon the delayed admission of the settlement of C & M's undercharge claims.

C & M argues that it was "fatally crippled in the presentation of its case" when the district court granted North Star's motion *in limine* to exclude evidence regarding C & M's undercharge claims. Prior to entering the motor carrier contract, C & M hauled freight for North Star for a number of years, and a billing dispute arose between the parties. On March 18, 1994, North Star and C & M executed a settlement agreement and mutual release of all claims, pursuant to which North Star paid $75,000 to C & M in exchange for the release of its undercharge claims. According to C & M, it agreed to settle the undercharge claims in exchange for being named North Star's exclusive carrier for the state of Michigan.

We review the district court's decisions on the admission of evidence for abuse of discretion. *Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 156–57 (6th Cir.1988). If the district court has abused its discretion, this court will not reverse a ruling or order a new trial absent actual prejudice. *In re Air Crash Disaster*, 86 F.3d 498, 526 (6th Cir.1996). There is no prejudice from the wrongful exclusion of evidence "if other substantially equivalent evidence of the same facts [was] admitted into evidence" or "if the absence of the evidence had no effect on the final result of the trial." *Id.*

Richard McWhorter, who negotiated the motor carrier contract on behalf of C & M, testified that the parties settled the undercharge claims and entered the motor carrier contract on the same day, and that C & M was told that it would be North Star's exclusive core carrier for the state of Michigan. The settlement agreement itself was entered into evidence.

The district court did not abuse its discretion in delaying the introduction of evidence regarding the undercharge claims settlement. North Star's motion *in limine* to exclude the undercharge claims was made in the context of C & M's damages, and those claims were barred by both the two-year statute of limitations and the settlement agreement itself. Regardless of whether the district court abused its discretion, C & M fails to demonstrate that it was actually prejudiced by the delayed introduction of the evidence of the undercharge claims settlement and therefore is not entitled to a new trial on that basis.

### B. Whether the jury's verdict that the contract between North Star and C & M did not provide that C & M would either be the exclusive carrier or have a first right of refusal was against the clear weight of the evidence.

C & M contends that the district court erred in denying its motion for a new trial because the jury's verdict was against the clear weight of the evidence.

We review the district court's denial of a motion for a new trial for abuse of discretion. *Monette v. AM–7–7 Baking Co.*, 929 F.2d 276, 280 (6th Cir.1991). The district court should deny a motion for a new trial "if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different con-

---

1. The district court limited its consideration to the motion for a new trial, because C & M failed to move for judgment as a matter of law at the close of all the evidence as required by Fed.R.Civ.P. 50.

clusion were he the trier of fact." *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 796 (6th Cir.1996).

■ The first paragraph of the motor carrier contract states, "CARRIER shall operate as one of SHIPPER's core carriers." North Star contends that "core" is not the equivalent of "exclusive" and that the use of "one of" and the plural "carriers" indicates that there would be more than one core carrier.

C & M points to paragraph 7 of the motor carrier contract, which provides:

> 7. CARRIER agrees not to "broker" any shipper assigned loads without written approval of the Manager of Steel Logistics at North Star Steel Company in Eagan, Minnesota. When SHIPPER assigns loads to CARRIER and CARRIER is unable to provide its own equipment, the CARRIER will either Trip–Lease the load(s) or return the assigned load(s) to the SHIPPER for reassignment to another carrier.

C & M argues that this provision supports the conclusion that C & M bargained to be North Star's exclusive carrier. According to C & M, because North Star was obligated to tender all intrastate Michigan prepaid shipping to C & M. this provision was inserted as a mechanism to follow if North Star's prepaid shipments ever exceeded C & M's capacity. This provision does not provide for either an exclusive right or a first right of refusal and refers only to C & M's ability to broker or trip lease a load.

C & M also points to paragraph 15 of the motor carrier contract, which states:

> 15. Neither party to this Contract shall assign any of its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld.

C & M argues that it never gave written or verbal consent to allow North Star to assign North Star-controlled, Michigan prepaid loads to any other carrier.

The extrinsic evidence presented at trial with respect to the usage of trade, course of dealing, and course of performance demonstrates that C & M and North Star did not intend for their relationship to be exclusive or to provide for a first right of refusal. *See Terry Barr Sales Agency. Inc. v. All–Lock Co.*, 96 F.3d 174, 180 (6th Cir.1996) ("Michigan law provides that the parties' practical interpretation of their contract, and their course of conduct under that contract, are entitled to great weight in interpreting ambiguous provisions of the contract.").

Considering the evidence presented at trial, a reasonable juror could find that the motor carrier contract did not confer on C & M an exclusive right or a first right of refusal. The motor carrier contract neither contains the words "exclusive" or "first right of refusal" nor guarantees a minimum amount of freight. The contract states that C & M shall be "one of" North Star's core carriers, language inconsistent with any intent of exclusivity. Witnesses testified that the term "core carrier" meant a carrier used on a regular basis and that giving a carrier exclusive rights was not good business judgment. Accordingly, the district court did not abuse its discretion in denying C & M's motion for a new trial.

**C.   Whether C & M is entitled to a new trial based upon alleged discovery abuses.**

According to C & M, North Star's responses to discovery requests indicate that North Star used only C & M for prepaid intrastate shipping between March 23, 1994, and November 19, 1996. C & M contends that the testimony of Fisher and Alex Washington, the shipping supervisor

at North Star's Monroe facility, conflicted with the evidence produced by North Star through the discovery process and created the misrepresentation that other carriers hauled prepaid freight for North Star when these other carriers actually hauled customer-preferred freight not covered by the motor carrier contract between C & M and North Star.

Discovery matters fall within the discretion of the district court and "do not amount to reversible error unless there is an abuse of discretion and substantial prejudice." *Int'l Union, UAW v. Michigan,* 886 F.2d 766, 771 (6th Cir.1989). To prevail on its motion for a new trial based on alleged discovery abuses, C & M must show that it "was prejudiced and that failure to grant a new trial is inconsistent with substantial justice." *Erskine v. Consol. Rail Corp.,* 814 F.2d 266, 272 (6th Cir.1987).

▮ Even if the testimony did conflict, C & M could have impeached those witnesses with the discovery responses. In short, C & M fails to demonstrate prejudice warranting a new trial.

**D. Whether the district court's denial of C & M's motion for a new trial was based upon an inappropriate assumption.**

C & M asserts that in denying its motion for a new trial, the district court failed to note the distinction between prepaid shipping and other types of shipping. Relying on one of North Star's interrogatory answers and statements made in C & M's brief in support of its motion for a new trial, the district court rejected C & M's claim that it did not know until trial of the other motor carriers being used by North Star during the contract period. C & M now asserts that the district court focused on its interrogatory referring to all intrastate shipping and failed to consider its interrogatory limited to prepaid intrastate

shipping. The interrogatory purportedly limited to prepaid intrastate shipping does not contain the word "prepaid." Neither the district court nor North Star can be faulted for failing to note the distinction between prepaid shipping and other types of shipping when no use of the term "prepaid" is included in the interrogatory. In any event, North Star's use of other carriers was just one of many reasons supporting the district court's finding that the jury rendered a reasonable verdict under the evidence.

## CONCLUSION

The district court's denial of C & M's motion for a new trial is AFFIRMED.