**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0678n.06

**No. 09-4394**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Sep 26, 2011**

LEONARD GREEN, Clerk

JAMES CARPENTER, )
)
    Petitioner, )
)
       v. )
)
)    ON PETITION FOR REVIEW
HILDA S. SOLIS; UNITED STATES )    OF AN ORDER OF THE
DEPARTMENT OF LABOR, )    UNITED STATES
)    DEPARTMENT OF LABOR
    Respondents, )    ADMINISTRATIVE REVIEW
)    BOARD
BISHOP WELL SERVICES CORP., )
)
    Intervenor. )
)

BEFORE: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

James Carpenter seeks review of a decision by the United States Department of Labor's

Administrative Review Board ("ARB"), holding that he failed to prove that his employer, Bishop

Well Services, retaliated against him in violation of the employee protection provisions of the Clean

Air Act ("CAA"), 42 U.S.C. § 7622, Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300j-9(i),

Energy Reorganization Act ("ERA"), 42 U.S.C. § 5851, Toxic Substances Control Act ("TSCA"),

15 U.S.C. § 2622, Comprehensive Environmental Response, Compensation and Liability Act

("CERCLA"), 42 U.S.C. § 9610, and Pipeline Safety Improvement Act ("PSIA"), 49 U.S.C. §

60129. Carpenter contends that the Administrative Law Judge's ("ALJ") procedural and evidentiary rulings deprived him of a fair hearing. We disagree and therefore deny the petition.

I.

In 1992, Carpenter was hired by David Bishop, the owner of Bishop Well Services, as a rig operator. While working in 2005, he was injured by a utility hose. After filing a workers' compensation claim, Carpenter was placed on "light duty," which allowed him to sit in a truck observing the work while receiving full pay.

At several workers' compensation hearings during the spring of 2006, Carpenter sought additional work restrictions, which Bishop contested. Bishop claims that in March 2006 he decided to "terminate Carpenter's light duty position," but refrained from doing so because Carpenter was scheduled to undergo "non work related surgery" in April 2006, and his "surgical nonwork-related restrictions" would expire on May 29, 2006.

In April 2006, Carpenter notified Bishop of a mechanical problem with one of the company's service rigs. Bishop directed an operator and a mechanic to resolve the problem. On May 16, 2006, Carpenter called the United States Department of Labor's Occupational Safety and Health Administration ("OSHA") and reported that Bishop Well's "'high pressure hoses are not safe'" and that its "'handrails on the trucks are missing.'"

On May 23, 2006, OSHA inspected the sites where Bishop Well Services was operating. It issued two citations directing additional training for the employees, which were unrelated to

Carpenter's complaints. On that same day, the Workers' Compensation Bureau denied Carpenter's claim.

On May 26, 2006, Bishop gave pay raises to all of his employees, except Carpenter because he "'had already decided to let [Carpenter] go.'" On May 30, 2006, Bishop's biggest client, Great Lakes Energy Partners, told Bishop that Carpenter was not doing any actual work and that they did not want him or any other light duty employee sent to any of their work sites. Bishop subsequently terminated Carpenter on May 31, 2006, explaining that he could no longer accommodate Carpenter's light duty restrictions.

On June 20, 2006, Carpenter filed a complaint with OSHA, alleging that Bishop had unlawfully discharged him in violation of the employee protection provisions of the CAA, SDWA, ERA, TSCA, CERCLA, PSIA, and Section 11(c) of the Occupational Safety and Health Act. *See* 29 U.S.C. § 660(c). OSHA conducted an investigation and ultimately determined that there was no reasonable cause to believe that Bishop had violated the employee protection provisions of the statutes and dismissed Carpenter's complaint.

Carpenter filed objections and requested a hearing on all of his claims, save for his claim under the OSH Act. An ALJ was assigned to the case and a hearing was held on October 31, and November 1, 2006. At the hearing, the ALJ denied Carpenter's motion to continue the hearing, gave Carpenter sixty days to take depositions of certain witnesses who were not at the hearing, and permitted Bishop to present expert testimony regarding Ohio's workers' compensation law.

On March 6, 2007, the ALJ issued a recommended decision and order concluding that Carpenter's claim failed because his complaint to OSHA did not constitute protected activity. The ALJ also credited Bishop's testimony that he made the decision to terminate Carpenter in March 2006, prior to Carpenter's OSHA complaint; and it found that Bishop was not aware of any protected activity at the time of the termination decision, such that Carpenter had failed to prove that his allegedly protected activity led to his discharge.

Carpenter filed a timely petition for review with the ARB, arguing that he did not receive a fair trial because of several of the ALJ's procedural and evidentiary rulings. The ARB concluded that the ALJ had not abused his discretion in any of the rulings challenged by Carpenter. The ARB also found that Carpenter had not engaged in protected activity. It therefore affirmed the ALJ's dismissal of Carpenter's claim and denied his subsequent motion for reconsideration.

Carpenter timely petitions for review.

II.

The parties do not dispute that we have jurisdiction over Carpenter's petition for review. However, we have an independent duty to inquire into the basis of our jurisdiction and satisfy ourselves that jurisdiction exists. *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998) (noting that "it is beyond question that federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists"); *see also Carroll v. United States*, 354 U.S. 394, 399 (1957) ("It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal

court over a given type of case is dependent upon authority expressly conferred by statute."). For the most part, we find that we have jurisdiction to review the ARB's decision under the respective statutes. *See* 42 U.S.C. § 7622(c)(1); 42 U.S.C. § 300j-9(i)(3)(A); 15 U.S.C. § 2622(c)(1); 42 U.S.C. § 5851(c)(1); 49 U.S.C. § 60129(b)(4)(A). CERCLA, however, vests exclusive jurisdiction in the federal district courts. *See* 42 U.S.C. §§ 9610(b), 9613(b). As the Ninth Circuit has observed, this "raises a knotty jurisdictional question" – namely, "[w]here an agency issues a decision that has two or more distinct bases of authority providing separate paths of judicial review, does the appellate court have jurisdiction to review the entire proceeding?" *Ruud v. U.S. Dep't of Labor*, 347 F.3d 1086, 1087 (9th Cir. 2003).

The Ninth Circuit answered this question in the affirmative. After noting that "[s]everal circuits . . . have held that where an agency decision has more than one basis of authority, one of which provides for review in the court of appeals, considerations of judicial economy and consistency justify review of the entire proceeding by the court of appeals," it outlined the "venerable history of judicially created doctrines acknowledging the need in some cases for the pragmatic application of jurisdictional principles" and explained why "[p]ermitting consolidated review in the court of appeals makes particularly good sense." *Id.* at 1088-90. Accordingly, the Ninth Circuit held that it would "entertain a petition to review an agency decision made pursuant to the agency's authority under two or more statutes, at least one of which provides for direct review in the courts of appeals, where the petition involves a common factual background and raises a common legal question." *Id.* at 1090. The Tenth Circuit has also adopted this approach. *See Anderson v. U.S.*

*Dep't of Labor*, 422 F.3d 1155, 1157 n.3 (10th Cir. 2005). Because we find the Ninth Circuit's

reasoning persuasive, and because the instant petition involves a common factual background (i.e.,

the ALJ's rulings) and a common legal question (i.e., whether those rulings violated Carpenter's

right to due process), we will exercise jurisdiction over Carpenter's CERCLA claim.

III.

We review final decisions of the ARB pursuant to the standards set forth in the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See, e.g.*, 42 U.S.C. §§ 9610(b), 9613(j)(2);

42 U.S.C. § 5851(c), 49 U.S.C. § 60129(b)(4)(A). Under the APA, we will set aside the ARB's

order only if it is unsupported by substantial evidence or is arbitrary and capricious, an abuse of

discretion, or otherwise not in accordance with law. 5 U.S.C. § 706. An abuse of discretion occurs

when we are left with the "definite and firm conviction that a trial court committed a clear error of

judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). Additionally, "[a]n agency's

violation of its procedural rules will not result in reversible error absent a showing that the claimant

has been prejudiced on the merits or deprived of substantial rights because of the agency's

procedural lapses." *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983); *see*

*also Hoffman v. Solis*, 636 F.3d 262, 273-74 (6th Cir. 2011); 5 U.S.C. § 706 ("In making the

foregoing determinations . . . due account shall be taken of the rule of prejudicial error.").

IV.

The whistleblower provisions of the CAA, SDWA, ERA, TSCA, CERCLA, and PSIA

prohibit employers from discharging or discriminating against employees for reporting violations

or instituting proceedings resulting from the administration or enforcement of each of the respective statutes. *See* 42 U.S.C. § 7622; 42 U.S.C. § 300j-9(i); 42 U.S.C. § 5851; 15 U.S.C. § 2622; 42 U.S.C. § 9610; 49 U.S.C. § 60129. To state a claim under these provisions, a plaintiff must establish that his employer retaliated against him because he engaged in protected activity. *Id.*; *see, e.g.*, *American Nuclear Res., Inc. v. U.S. Dep't of Labor*, 134 F.3d 1292, 1295 (6th Cir. 1998). The ALJ and ARB found that Carpenter did not make such a showing.

In the present petition for review, Carpenter argues that he is entitled to a new hearing because the ALJ's procedural and evidentiary rulings deprived him of the "opportunity to be heard at a meaningful time and in a meaningful manner" in violation of the Fifth Amendment's due process guarantee. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Bishop argues that Carpenter's due process claim is not preserved because he failed to raise it before the ARB. Bishop and the Secretary of Labor also argue that if the claim is not forfeited, it fails because the ALJ did not abuse his discretion in rendering any of the challenged rulings and because any such abuses of discretion were harmless. Assuming, without deciding, that Carpenter's due process claim is preserved, we reject it for the reasons explained below.

Carpenter argues that his right to a fair hearing was violated because the ALJ abused his discretion by (1) denying his motion to compel discovery responses; (2) denying his motion to continue the hearing; (3) allowing Barbara Knapic to testify; and (4) refusing to compel Bishop to produce Gary Schupbach at the hearing or at a later deposition. We address these claims in turn.

A. Motion to Compel Discovery Responses

Carpenter first contends that the ALJ abused his discretion by summarily denying his motion to compel discovery responses. According to Carpenter, the ALJ should have ordered the responses that Bishop refused to provide, because the Department of Labor regulations and federal caselaw permit liberal discovery, and because he needed the responses to show evidence of the alleged underlying violations, evidence of alleged retaliatory motive, the relationship between Bishop and Great Lakes, and to challenge the credibility of certain witnesses. We find Carpenter's argument unavailing.

Discovery matters "do not amount to reversible error unless there is an abuse of discretion and substantial prejudice." *Int'l Union, UAW v. Michigan*, 886 F.2d 766, 771 (6th Cir. 1989); *accord Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1466 (6th Cir. 1993). Here, assuming that the ALJ's denial of Carpenter's motion was an abuse of discretion, there is no prejudice because Carpenter has not shown that any of the discovery requests denied by the ALJ would allow him to prove that he engaged in protected activity.[1] *Cf. Lewis v. Synagro Tech., Inc.,* 2004 WL 384727, at *9 (ARB Feb. 27, 2004) (ALJ's denial of discovery was neither arbitrary nor an abuse of discretion where it "would not change the ALJ's proper findings that WEF is not a covered employer under the applicable whistleblower statutes"); *Hoffman*, 636 F.3d at 273-74.

---

[1]Carpenter's suggestion that he does not need to make such a showing because the ALJ's decision will be vacated if we find that he was denied due process is simply incorrect. His due process claim is based solely on the ALJ's allegedly erroneous procedural rulings, and he cannot have been denied the opportunity to present his claim at a meaningful time and in a meaningful manner if those rulings had no effect on his case. *Cf. Hamby v. Neel*, 368 F.3d 549, 562 (6th Cir. 2004).

To be sure, Carpenter does assert that "when an employer mistakenly believes that an employee engaged in protected activity, the employee may still make a claim for unlawful retaliation even though the employee engaged in no protected activity at all" and that "[i]n this regard, a new hearing with discovery of Bishop's records about the pay raise for everyone but Carpenter, his personnel records and the testimony of Garry Schupbach could lead to a different result." Yet while Carpenter is correct that some courts have applied an employer-perception theory of protected activity in other contexts, *see Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 565 (3d Cir. 2002) (addressing the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Pennsylvania Human Relations Act); *Saffels v. Rice*, 40 F.3d 1546, 1549 (8th Cir. 1994) (addressing the Fair Labor Standards Act); *Brock v. Richardson*, 812 F.2d 121, 123-25 (3d Cir. 1987) (addressing the Fair Labor Standards Act), Carpenter has cited no case, and we have found none, that applies that theory in the context of the statutes at issue here.[2]

More importantly, the whistleblower provisions of the relevant statutes "generally do not protect complaints restricted solely to occupational safety and health, unless the complaints also encompass public safety and health or the environment." *Post v. Hensel Phelps Constr. Co.*, ALJ No. 94-CAA-13, slip op. at 2 (Sec'y Aug. 9, 1995); *see also Devine v. Blue Star Enters., Inc.*, ARB

---

[2]Indeed, ARB decisions applying these statutes consistently hold, as the ARB held in this case, that *engaging in protected activity* is an essential element of retaliation claims. *See, e.g., Backus v. Ind. Mich. Power Co.*, ARB No. 06-129, ALJ No. 2005-ERA-008, slip op. at 10 (ARB Sept. 30, 2008); *Devers v. Kaiser Hill Co.*, ARB No. 03-113, ALJ No. 2001-SWD-00003 (ARB March 31, 2005); *Kester v. Carolina Power & Light Co.*, ARB No. 02-007, ALJ No. 00-ERA-31, slip op. at 6-8 (Sept. 30, 2003); *Paynes v. Gulf States Utils. Co.*, ARB No. 98-045, ALJ No. 93-ERA-47, slip op. at 4-5 (ARB Aug. 31, 1999).

No. 04-109, ALJ No. 2004-ERA-010, slip op. at 6 (ARB Aug. 31, 2006); *Kester*, ARB No. 02-007, slip op. at 9; *Knox v. U.S. Dep't of the Interior*, ARB No. 03-040, ALJ No. 01-CAA-3, slip op. at 4 (ARB Sept. 30, 2004); *Culligan v. Am. Heavy Lifting Shipping Co.*, ARB No. 03-046, ALJ Nos. 00-CAA-20, 01-CAA-09, 01-CAA-11, slip op. at 9 (ARB June 30, 2004). Allowing Carpenter to proceed on an employer-perception theory of protected activity when he does not challenge the ALJ's and ARB's determinations that his complaint was restricted solely to occupational safety and health would effectively eviscerate this limitation.

Finally, the rationale underlying the employer-perception theory of protected activity is inapplicable in the present case. Courts applying the theory in other contexts have done so because they conclude it is necessary to reduce the prevalence of workplaces in which employees are afraid to report their employer's violations of law. *See, e.g.*, *Brock*, 812 F.2d at 125. That concern carries no weight here because there is no question that Carpenter's report to OSHA is protected under the OSH Act and that that Act contains provisions which deter employers from engaging in conduct that would create such workplace environments. *See* 29 U.S.C. § 660(c) ("No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter" and "Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may . . . file a complaint with the Secretary alleging such discrimination."). Accordingly, we hold that the ALJ's denial of Carpenter's motion to compel discovery was not error requiring reversal.

B.  Motion to Continue the Hearing

Next, Carpenter argues that the ALJ's denial of his motion to continue the hearing was an abuse of discretion.  Where, as in this case, the motion for a continuance is filed less than fourteen days before the scheduled hearing date, an ALJ may grant the continuance only upon a showing of good cause.  *See* 29 C.F.R. § 18.28(b).  The ALJ's "grant or denial of a continuance . . . will not be overturned absent a clear showing of abuse.  Such an abuse will be found only where the exercise of discretion is demonstrated to clearly prejudice the appealing party."  *Malpass v. Gen. Elec. Co.*, ARB Nos. 85-ERA-38, 85-ERA-39, 1994 WL 897244, at *3 (Sec'y March 1, 1994) (quoting *NLRB v. Pan Scape Corp.*, 607 F.2d 198, 201 (7th Cir. 1979)) (internal quotation marks and citations omitted); *cf. United States v. Garner*, 507 F.3d 399, 408 (6th Cir. 2007) ("We review denial of a motion for a continuance for abuse of discretion. To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice . . . .") (internal citation omitted).

We find a couple of cases instructive.  First, in *Jackson v. Butler & Co.*, ARB Nos. 03-116, 03-144, ALJ No. 2003-STA-26, 2004 WL 1955436 (ARB Aug. 31, 2004), the ARB held that the ALJ did not abuse its discretion in denying a motion to continue the hearing where the respondent requested a continuance seven days before trial.  *Id.* at *4.  In so finding, the ARB rejected the respondent's newly-raised argument that its counsel needed more time to secure the testimony of a witness because the respondent failed to show that the witness's absence was prejudicial.  *Id.*  Also helpful is *Brace v. Commissioner of Social Security*, 97 F. App'x 589 (6th Cir. 2004).  In that case, the petitioner argued that "the ALJ erred in denying his request to postpone his hearing."  *Id.* at 592.

We noted, however, that the petitioner's "counsel did not request a continuance of the hearing until less than one week prior to the scheduled hearing[,]" and that "[t]he ALJ allowed Brace thirty days after the hearing to submit additional medical evidence to support his claim." *Id.* We therefore concluded that "the ALJ did not commit reversible error in denying Brace a continuance of his administrative hearing." *Id.*

The same conclusion applies here. There is no dispute that Carpenter filed his motion less than one week before the hearing. And, despite Carpenter's current assertion that the ALJ's decision to proceed with the hearing, despite his conflicting appointment, was "outrageous," Carpenter apparently worked with the ALJ to present his testimony out of order so that he could attend the appointment while his attorney was questioning and cross-examining other witnesses, and he has not explained how this arrangement prejudiced him.[3] Moreover, even though the ALJ found Carpenter remiss in not subpoenaing the Bishop-employee witnesses before the hearing, the ALJ accommodated Carpenter's request for this discovery by permitting him to take depositions within sixty days following the hearing. On this record, we conclude that the ALJ acted within his discretion in denying Carpenter's motion to continue the hearing and that Carpenter was not prejudiced by that decision.

---

[3]A petitioner's complete absence from a hearing will, of course, violate due process inasmuch as the petitioner is denied the opportunity "to present evidence and to state his or her position." *See Stoner v. Sec'y of HHS*, 837 F.2d 759, 760-61 (6th Cir. 1988); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). However, Carpenter only missed a portion of the hearing in this case, and the record shows that he was not denied the opportunity to present evidence or state his position.

C.  Allowing Barbara Knapic to Testify

Carpenter also asserts that the ALJ abused his discretion when he permitted Barbara Knapic to testify regarding Ohio's workers' compensation law, even though Bishop had not disclosed her as an expert witness during discovery.  He points out that in response to an interrogatory, Bishop stated, "No decision has yet been made as to whether Respondent will call an expert witness."  He claims that Bishop's failure to disclose Knapic was prejudicial because he did not receive pre-hearing answers to the interrogatories regarding her qualifications, preparation, opinions, and the bases for those opinions, and because it was not until after Knapic testified that he learned that she is the sister of Bishop's counsel, and he was thus deprived of that basis for cross-examination.

Bishop Well counters that it did not decide to call Knapic until the first day of the hearing, when the ALJ expressed concern regarding the complex and confusing nature of Ohio's workers' compensation system.  Bishop Well claims that upon the ALJ expressing his concern, it asked to call an expert witness on Ohio workers' compensation law, and the ALJ granted that request.  Because prior to the first day of the hearing it had no intention of calling Knapic or any other expert witness, Bishop Well asserts that it could not have disclosed Knapic prior to the hearing.  Additionally, Bishop Well contends that Carpenter suffered no prejudice as a result of this nondisclosure.

We substantially agree with Bishop Well.  As mentioned, discovery matters do not amount to reversible error unless there is an abuse of discretion and substantial prejudice.  *See Miller*, 989 F.2d at 1466 (applying this standard in the context of a trial court's decision to allow testimony from undisclosed witnesses).  Again, Carpenter has failed to show prejudice.  He was allowed to

cross-examine Knapic at the hearing, and the ALJ gave him sixty days leave to depose his own workers' compensation expert to rebut Knapic's testimony, which he failed to do. Although Carpenter contends that he was prejudiced because he was not able to cross-examine Knapic regarding her familial relationship with Bishop's counsel, that assertion is unconvincing given that Carpenter never attempted to rebut the substance of Knapic's testimony. Accordingly, we find no reversible error.

### D. Refusing to Compel Bishop to Produce Gary Schupbach

Finally, Carpenter argues that the ALJ abused his discretion in refusing to compel Bishop to produce its employee, Gary Schupbach, for the hearing, as well as for a post-hearing deposition. Bishop counters that Carpenter waived his right to compel Schupbach because (1) he waited until the night before the hearing to request Schupbach's presence, (2) he could have timely requested a subpoena or asked the ALJ to otherwise use its authority to compel Schupbach to appear at the hearing, (3) the parties stipulated as to what Schupbach would testify to at the hearing, and (4) Carpenter conceded that he did not need to depose Schupbach after the hearing. Bishop also contends that, even if the ALJ abused his discretion in refusing to compel Schupbach's attendance at the hearing, the error was harmless.

We conclude that Carpenter waived his right to call Schupbach as a witness. In determining whether Schupbach needed to appear at the hearing, the ALJ asked Carpenter's counsel for a proffer of Schupbach's proposed testimony. Carpenter and Bishop then stipulated as to what Schupbach would testify to if present at the hearing, and the ALJ accepted the stipulated testimony as evidence.

- 14 -

Carpenter did not suggest that Schupbach would testify to anything else; nor did Carpenter object to the ALJ excusing Schupbach as a witness. Accordingly, Carpenter cannot now complain that Schupbach did not testify at the hearing or credibly contend that he was entitled to an adverse inference based on Bishop's failure to produce Schupbach.

Carpenter also conceded that he did not need Schupbach to testify at a post-hearing deposition. When discussing the length of time Carpenter would need to take post-hearing depositions of the Bishop-employee witnesses, the ALJ stated: "I thought, [Schupbach] we'll live, we're going to live with, without a deposition. But you want a deposition nonetheless of [Schupbach]? I thought the stipulation that Mr. Bishop told somebody that the rigs –." Carpenter's counsel, after a brief interruption from Bishop's counsel, replied: "That's correct – that it's not necessary, Your Honor." In light of this exchange, we conclude that the ALJ did not abuse his discretion in quashing Carpenter's post-hearing subpoena directing Schupbach to appear for a deposition.

Having found no error requiring reversal with regard to the ALJ's challenged rulings, we readily conclude that those rulings did not deprive Carpenter of a fair hearing in violation of the Fifth Amendment.

V.

For these reasons, we deny the petition for review.