NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0246n.06
No. 21-1336

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DAVID ANTHONY LEVACK, | ) | **FILED** |
| Petitioner-Appellant, | ) | Jun 17, 2022 |
|  | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| MIKE BROWN, Warden, | ) | COURT FOR THE WESTERN |
| Respondent-Appellee. | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
|  | ) |  |

Before: BATCHELDER, CLAY, and LARSEN, Circuit Judges.

LARSEN, J., delivered the opinion of the court in which BATCHELDER and CLAY, JJ., joined. CLAY, J. (pg. 10), delivered a separate concurring opinion.

LARSEN, Circuit Judge. David Levack appeals the district court's denial of his habeas petition under 28 U.S.C. § 2254. Levack was convicted in Michigan state court of first-degree murder, first-degree home invasion, and witness intimidation. The district court issued a certificate of appealability on one issue: whether sufficient evidence supported his convictions. But a sufficiency of the evidence claim presents a "nearly insurmountable burden" on its own and doubly so under AEDPA. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc) (citation omitted). Because Levack's arguments do not meet this stringent standard, we AFFIRM.

**I.**

**A.**

Levack was convicted in a Michigan court of murdering Joyce Johnson, who was set to testify against him in a larceny case. *People v. Levack*, No. 311630, 2014 WL 2118088, at *1

(Mich. Ct. App. May 20, 2014).  Levack had provided home healthcare to Johnson's husband until his death in 2009.  *Id.*  Afterwards, Levack continued to do handyman work for Johnson around her house.  *Id.*  In December 2010, Johnson reported that Levack had stolen some of her jewelry.  *Id.*  Levack was charged with the theft, and his trial was scheduled for September 27, 2012.  *Id.*  Johnson believed that Levack was the culprit and agreed to testify against Levack; but she failed to appear on the day of trial.  *Id.*  The police conducted a welfare check at Johnson's home and discovered Johnson's dead body in the bathtub; police later determined that Johnson had been strangled the day before the trial.  *Id.*  A jury convicted Levack of first-degree murder, first-degree home invasion, and witness intimidation.

Levack appealed, arguing, among other things, that the prosecution had presented insufficient evidence to support any of the three convictions.  The Michigan Court of Appeals denied this claim on the merits.  *Levack*, 2014 WL 2118088, at *1–5.  The Michigan Supreme Court denied Levack's application for leave to appeal.  *People v. Levack*, 858 N.W.2d 446 (Mich. 2015) (order).

**B.**

Levack then filed a habeas petition in federal court raising several claims.  The magistrate judge recommended denying each of them—except for his sufficiency of the evidence claim.  As to that claim, the magistrate judge determined that the Michigan Court of Appeals had unreasonably applied federal law by failing to explain how the evidence proved the essential elements of Levack's three offenses.  The magistrate judge found it problematic that the Michigan Court of Appeals had failed to list the elements of Levack's crimes.  Both the State and Levack filed objections to the report and recommendation.

The district court sustained the State's objection and overruled Levack's. The court determined that the Michigan Court of Appeals' failure to mention each element of Levack's crimes did not amount to an unreasonable application of federal law. Because appellate review is limited to the issues raised by the appellant, the court found that the Michigan Court of Appeals properly concentrated on the lone issue Levack raised—whether the evidence established Levack's identity as the murderer. The district court further concluded that the Michigan Court of Appeals had reasonably determined that the evidence established Levack's guilt beyond a reasonable doubt. Therefore, the district court rejected the report and recommendation as to Levack's sufficiency of the evidence claim, adopted the rest, and denied Levack's habeas petition.

Levack appeals.

## II.

As a preliminary matter, we clarify the issues on appeal. Levack raises three claims: (1) sufficiency of the evidence, (2) jury misconduct, and (3) ineffective assistance of counsel.[1] But Levack failed to raise any objections to the magistrate judge's recommendation that his jury misconduct and ineffective assistance of counsel claims be denied. So those two claims are forfeited on appeal. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). There's a second reason we can't review Levack's jury misconduct and ineffective assistance of counsel claims: They are not certified for appeal; the district court certified only the sufficiency claim. *See Van Tran v. Colson*, 764 F.3d 594, 623 (6th Cir. 2014); 28 U.S.C. § 2253(c). Therefore, the

---

[1] Levack mentions a fourth issue in his Statement of the Issues: "Whether the state court's failure to remand the case based on new evidence in the form of a witness recantation is a miscarriage of justice and further violation of Mr. Levack's constitutional rights." This issue is not before us for the reasons given above and also for a third reason: the argument is not addressed or developed later in Levack's brief. *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014) (undeveloped arguments are deemed abandoned).

only issue before us is whether the Michigan Court of Appeals unreasonably applied federal law in denying Levack's sufficiency of the evidence claim.

The Antiterrorism and Effective Death Penalty Act (AEDPA) sharply limits federal court review of a state habeas petitioner's claims of error. When a state court has adjudicated a claim on the merits, we may reverse the state court's decision only if it (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), evidence is constitutionally insufficient only when, "viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard, alone, presents "a nearly insurmountable hurdle," and AEDPA requires an additional level of deference to a state court's adjudication of a sufficiency challenge. *Davis*, 658 F.3d at 534 (citation omitted). The Michigan Court of Appeals adjudicated Levack's sufficiency of the evidence claim on the merits. So we cannot grant relief unless the Michigan court's denial of his sufficiency claim was not merely wrong but objectively unreasonable—i.e., "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Levack claims, as did the magistrate judge, that the Michigan Court of Appeals unreasonably applied *Jackson* by failing to explicitly mention the elements of his crimes. But "federal courts have no authority to impose mandatory opinion-writing standards on state courts." *Johnson v. Williams*, 568 U.S. 289, 300 (2013). And, in any event, the district court rightly noted that Levack's sufficiency claim in the Michigan Court of Appeals disputed only his *identity* as the

murderer—not any other particular element of his crimes. We cannot fault the Michigan Court of Appeals for focusing its analysis on the lone offense element contested by Levack. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[A]s a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." (quotation marks omitted)); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) (a party forfeits an argument by failing to raise it on appeal).

In this court, Levack again argues that the circumstantial evidence presented at trial was insufficient to establish that he was the culprit. We disagree. Start with motive. *See People v. Unger*, 749 N.W.2d 272, 286 (Mich. 2008) ("Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant."). Johnson was set to testify against Levack in his larceny case; Levack was "really upset" about the case and the prospect of a lengthy prison sentence if convicted. One witness testified that Levack was "livid" that Johnson "was going to testify against [him]"; another testified that Levack had vowed to "take care of the problem." Accordingly, a rational juror could find Levack had a motive to murder Johnson to stop her from testifying in his larceny case.

Levack also engaged in suspicious behavior before the murder. The day before Johnson was killed, a neighbor found Levack on the neighbor's property, dressed in camouflage and looking around with binoculars. The neighbor testified that Levack was "[v]ery, very nervous." Levack claimed to be birdwatching because he had bet his friend, Jack Madsen, that he could find and photograph a pileated woodpecker. Yet Madsen testified that he never had a bet with Levack. And various friends expressed skepticism that Levack was any kind of ornithologist. Other evidence supported the fact that Levack was in the immediate vicinity of Johnson's home. For

instance, the police found a Powerade bottle with Levack's DNA about 75 feet from the sliding glass door of Johnson's home. The bottle appeared to have been placed there recently because the police found it sitting on top of leaves and it had not been discolored by sun or moisture.

Then there's the matter of Levack's purported alibi. Levack told police that, on the night Johnson was murdered, he was with some friends—first, he "was with Lex and his brother Kim, and then [he] was with a buddy named Randy." Lex did testify that Levack had come over to his house in Iron Mountain that evening, arriving around 6:00 or 7:00 p.m. and leaving around 9:00 p.m., or "[w]hatever time it gets dark in September." But other evidence at trial cast doubt on Levack's story. First, Randy contradicted this story; he didn't think he had seen Levack the day before his larceny trial. Second, Levack's cell phone records show that he was in Crystal Falls during the time that he was supposedly with Lex in Iron Mountain. And witness testimony corroborated that fact. Wesley Jones, for example, testified that Levack missed his 7:00 p.m. pool league that night and that, when Jones called Levack wondering where he was, Levack said he was in Crystal Falls. And Levack phoned Johnson's home around 9:00 p.m., while he was in Crystal Falls; that call lasted nearly 3 minutes, but Levack later told police that he hadn't spoken to Johnson in more than a year. A rational juror, therefore, could find that Levack was in Crystal Falls at the time of the murder; a rational juror could also conclude that Levack had lied to police about his whereabouts, suggesting consciousness of guilt. *See People v. Wolford*, 473 N.W.2d 767, 769 (Mich. Ct. App. 1991).

Levack's actions after the murder also provide evidence of his guilt. Sometime after Johnson's murder, Levack hung out with his friend, Brian Krause. Krause testified that Levack made a few incriminating remarks, including "I can't believe I went back to that house again and at least there aren't any marks [on the neck]."

Then, on October 1, police visited the home where Levack was staying. Levack eventually agreed to answer some questions, but soon asked to stop. He did agree, however, to meet with the officers for an interview on October 3. But on the morning of the planned interview, police received a tip that Levack was loading his belongings in a taxi and attempting to flee. When the police found Levack at a Motel 6, he brandished a knife at them, later holding it to his own throat and threatening suicide. Eventually, the officers subdued and arrested him, finding $1,000 in his wallet. Based on this evidence, a rational juror could find that Levack had attempted to flee, which supports an inference of consciousness of guilt. *See Unger*, 749 N.W.2d at 287. And a rational juror could find that Levack had suicidal ideation, which, in some circumstances, also "may be used as circumstantial evidence of consciousness of guilt." *People v. Woodley*, No. 291040, 2010 WL 2629718, at *2 (Mich. Ct. App. July 1, 2010) (citing *United States v. Cody*, 498 F.3d 582, 591–92 (6th Cir. 2007)).

Finally, Eddie Prater, Levack's jail cellmate testified that Levack had suggested he had killed Johnson. Levack told Prater that his "friend" killed Johnson. Prater said that Levack used air quotes around "friend," suggesting that the culprit was actually Levack.

Viewing this circumstantial evidence in the light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, that Levack murdered Johnson. Accordingly, the Michigan Court of Appeal's decision was certainly not objectively unreasonable under AEDPA.

Levack's arguments to the contrary are unavailing. He relies on two points in his favor: (1) a lack of direct evidence placing him inside the home and (2) a recent affidavit from Krause recanting his testimony. As to the first point, Levack notes that no DNA evidence directly placed him within Johnson's home. For instance, the forensic examiner testified that Levack's

-7-

DNA was not present on the lock of Johnson's sliding door, nor could the examiner conclusively determine whether Levack's DNA was on a hanging phone receiver in Johnson's home. And the examiner found no foreign DNA under the victim's fingernails, nor did he find any of Johnson's DNA on various items obtained from Levack's car and home. So, Levack claims, this case is just like *Tanner v. Yukins*, 867 F.3d 661 (6th Cir. 2017). In *Tanner*, we determined that the Michigan Supreme Court had unreasonably applied *Jackson* because there were serious gaps in the inculpatory evidence connecting the petitioner to a murder. *Id.* at 673–74. We noted, for example, that no evidence suggested that the petitioner had entered the bar where the victim was murdered. *Id.* at 673. But it wasn't this fact alone that made the state's case insufficient; it was the lack of almost any evidence connecting the petitioner to the murder, in addition to the existence of some exculpatory evidence that mattered. As we noted, the state's evidence "establishe[d], at best, 'reasonable speculation' that [the petitioner] was in the [bar]'s parking lot around the time of the murder and that she was last in possession of the murder weapon approximately a month before the murder." *Id.* But that isn't the case here. As already discussed, there is sufficient evidence for a rational juror to find that Levack murdered Johnson. And the fact that *some* points supported Levack's innocence at trial isn't enough to establish a constitutional violation. Instead, Levack's argument boils down to a request for us to place greater weight on the lack of DNA evidence inside the home than the jury apparently did. But we "do not reweigh the evidence" when analyzing a sufficiency claim. *Johnson v. Mitchell*, 585 F.3d 923, 931 (6th Cir. 2009).

As to the affidavit, Krause recanted his testimony and avers that Levack never made the statements, "I can't believe I went back to that house again" or "There's no marks on the neck." But federal court review "under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Krause's

affidavit was not before the Michigan Court of Appeals because Levack presented this evidence for the first time in his objection to the report and recommendation. So we cannot consider this evidence in determining whether the Michigan Court of Appeals' decision was reasonable. *See Braggs v. Bauman*, No. 19-2419, 2020 WL 7230638, at *4 (6th Cir. Sept. 16, 2020) (order); *Williams v. Trammell*, 782 F.3d 1184, 1211 (10th Cir. 2015).

For these reasons, the Michigan Court of Appeals did not unreasonably apply *Jackson*.

\* \* \*

We AFFIRM.

CLAY, Circuit Judge, concurring. I agree with the majority that Levack's convictions were supported by sufficient evidence. But the denial of habeas relief does not necessarily mean the Michigan Court of Appeals's adjudication of Levack's appeal was procedurally faultless. The Supreme Court has unambiguously held that sufficiency of the evidence challenges should be resolved "with *explicit* reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) (emphasis added). Below, the Michigan Court of Appeals failed to mention even a single element of any of his crimes of conviction, including the sole element Levack challenged: identity. Levack's arguments challenging this procedural mistake are well-taken; however, under the doubly deferential standard we must follow under the Antiterrorism and Effective Death Penalty Act, Levack's habeas petition is properly denied.